Pete **MONTOYA**, Plaintiff–Appellant,

v.

**CITY OF COLORADO SPRINGS, a Municipal Corporation, and its agents Richard C. Smith, Robert Rachwitz, Eldon K. Boyer, James Larson, Ralph B. Litell, Donald E. Schinkel, Neil J. Sorenson, and William W. Sopp, Defendants–Appellees.**

No. 87CA0558.

Colorado Court of Appeals,
Div. III.

Jan. 19, 1989.

As Modified on Denial of Rehearing
Feb. 16, 1989.
Certiorari Pending May 4, 1989.

J. Gregory Walta, Colorado Springs, for plaintiff-appellant.

Hall & Evans, Malcolm S. Mead, and Cathy S. Harris, Denver, for defendants-appellees.

CRISWELL, Judge.

The plaintiff, Pete Montoya, appeals from the summary judgment of the district court that dismissed his civil rights claims under 42 U.S.C. § 1981 and § 1983 against the defendants, City of Colorado Springs (City) and several of its employees. We reverse.

Montoya joined the City's fire department in 1974 and was a lieutenant in the department at the time of the events giving rise to this litigation. In 1983 he, together with nine other members of the department, applied for promotion to the position of fire captain. One of the other applicants was the son of the department's chief.

Evidence submitted to the trial court in conjunction with the defendants' motion to dismiss reflected that all of the applicants for the position were ranked in accordance with four weighted factors. Fifty percent of their ranking depended upon their performance on an objective written examination; 30% was based on how well they did in an interview and oral examination conducted by fire officials unassociated with the department; 10% was based upon their seniority with the department; and 10% was based upon the results of an interview conducted by selected department supervisors, who were chosen by the chief for that purpose.

Montoya scored the highest on the written examination, while the chief's son and another applicant achieved the fourth highest score. The documents presented to the trial court reflect that Montoya was ranked fifth by the outside fire officials, and they

ranked the chief's son seventh. Both had the same seniority. The board of supervisors ranked the chief's son first (they gave him a perfect score) and Montoya eighth. The overall rankings supposedly placed the chief's son third on the eligibility list for promotion and Montoya sixth. Since there were only three vacancies in the position for which the evaluations were being made, the chief's son was promoted; Montoya was not.

Based upon these facts, and relying also upon various disparaging racial remarks which had allegedly been made by department supervisors, Montoya filed a charge of racial discrimination with the Colorado Civil Rights Commission (Commission) pursuant to § 24–34–306(1), C.R.S. (1988 Repl. Vol. 10A). He alleged that his lack of promotion was the result of racial discrimination in violation of § 24–34–402(1)(a), C.R.S. (1988 Repl.Vol. 10A). After an investigation, but without a hearing, the Director of the Civil Rights Division (Director) determined that there was no probable cause for Montoya's charge, and she dismissed it in the exercise of her authority under § 24–34–306(2), C.R.S. (1988 Repl. Vol. 10A). By regulation, Montoya was authorized to appeal the Director's determination of no probable cause to the Commission. Civil Rights Commission Rule 10.-6(A)(1), 3 Code Colo.Reg. 708–1. Montoya, however, chose not to do so.

Thereafter, Montoya, alleging that his suit was authorized by 42 U.S.C. § 1981 and § 1983, filed his court complaint that asserted three claims for relief. In its answer, the defendants admitted that Montoya was seeking to invoke the court's jurisdiction under both these statutes, but denied that they had violated either.

The substantive allegations of Montoya's first claim noted that he was a "Chicano citizen of the United States" and asserted that defendants had discriminated against him under color of state law by failing to promote him. This first claim alleged that these actions "were a deliberate violation of [his] constitutional rights."

The second claim asserted that Montoya's "rights to due process and equal protection of the law under the Colorado and United States Constitution" had been violated. The basis for such claimed violations consisted of the alleged disregard, or breach, of various policies and procedures that the City had adopted to govern promotions within the department, including a policy of testing and ranking applicants "without unfair advantage or discrimination of any kind."

The third claim was based on state, not federal, law. It alleged that the City's actions in failing to promote Montoya violated an implied and express agreement between the City and him, which agreement incorporated the precepts of due process and equal protection, as well as all of the civil service rules and policies that were described in his second claim.

In its order of dismissal, the trial court concluded that the complaint's third claim stated a proper claim for relief under state law and that there existed numerous issues of material fact with respect to the allegations made under this claim. It concluded, therefore, that the entry of summary judgment on the third claim was precluded.

The trial court dismissed Montoya's two federal claims, however. In doing so, it concluded that (1) the first claim, asserting racial discrimination, could not be brought under 42 U.S.C. § 1983 because it sought to enforce rights created by Title VII of the Civil Rights Act of 1964, Pub.L. No. 88–352, 78 Stat. 241, 42 U.S.C. § 2000e (1982) (Title VII), and (2) the second claim, asserting equal protection and due process violations, could not be asserted by Montoya because Montoya had not demonstrated that he possessed a property interest in the promotion process.

## I. *The Preclusive Effect of Title VII*

■ Both the Civil Rights Act of 1870, 42 U.S.C. § 1981, and the Civil Rights Act of 1871, 42 U.S.C. § 1983, enacted by Congress in the aftermath of the Civil War,

were intended to implement the provisions of the Fourteenth Amendment. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Section 1981 grants to "all persons" the same right "to make and enforce contracts" as is enjoyed "by white citizens." This provision has been held to create substantive federal rights and to prohibit racial discrimination arising out of the employment relationship, whether that employment is with a private employer or with a local government. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). *See Sethy v. Alameda County Water District*, 545 F.2d 1157 (9th Cir.1976).

Section 1983, on the other hand, is not itself the source of any substantive rights. *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Goebel v. Colorado Department of Institutions*, 764 P.2d 785 (Colo.1988). It merely provides a vehicle to allow any "person" who has been deprived "of any rights, privileges, or immunities secured by the Constitution and laws" by any other "person [acting] under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory," to secure judicial redress, either at law or in equity. Both individuals and municipalities are considered to be "persons" under this statute. *Monell v. Department of Social Services, supra.* And, relief may be granted through use of § 1983 either for a violation of the Constitution or for a violation of a federal statute. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). *See Oten v. Colorado Board of Social Services*, 738 P.2d 37 (Colo.App. 1987).

Title VII prohibits discrimination in employment based upon race, religion, or sex. It provides an elaborate administrative process for the investigation and conciliation of claims of such employment discrimination. 42 U.S.C. §§ 2000e–2(a)(1) and 2000e–5 (1982). While these administrative procedures do not result in any binding adjudicatory decisions, they must, never-

theless, be exhausted before a claimant may seek judicial relief under that statute. 42 U.S.C. § 2000e–5(f)(1) (1982); *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

Title VII initially had no application to the states or local governments. In 1972, however, Congress adopted the Equal Employment Opportunity Act, Pub.L. 92–261, 86 Stat. 103, which caused the strictures against discrimination as contained in Title VII to be extended to local governments when acting as employers. 42 U.S.C. § 2000e (1982).

The legislative history of this particular amendment makes it indelibly clear that Congress, by adopting this legislation, did not mean to make Title VII the exclusive means of relief for local public employees or to foreclose such employees from utilizing either § 1981 or § 1983 to obtain relief. It was recognized that judicial relief under § 1981 and § 1983 had been available to such employees before the extension of Title VII to them, and it was specifically stated, both in a House report and in the various congressional debates, that this 1972 amendment was intended to supplement, not to supersede, the previous remedies available. *See Keller v. Prince George's County*, 827 F.2d 952 (4th Cir. 1987) (describing, in some detail, the legislative history of this 1972 amendment). *See also Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) ("the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes").

Relying upon this legislative history as demonstrative of the general intent underlying the provisions of Title VII as a whole, the Supreme Court has specifically held that Title VII does not preempt an employee from asserting an independent action under § 1981, even though the factual circumstances would also support a claim under Title VII. *Johnson v. Railway Express Agency, Inc., supra.*

Although the Supreme Court has not yet ruled upon the precise question whether the adoption of the Title VII remedy, or its later extension to local public employees, was intended to supersede the remedies available to them under § 1983, nevertheless, the majority of the federal courts of appeal that have spoken to this issue have said that Title VII does not preclude such an action. Thus, a § 1983 action may be pursued either in conjunction with, or independently of, an action under Title VII. *Keller v. Prince George's County, supra; Day v. Wayne County Board of Auditors,* 749 F.2d 1199 (6th Cir.1984); *Trigg v. Fort Wayne Community Schools,* 766 F.2d 299 (7th Cir.1985); *Lowe v. Monrovia,* 775 F.2d 998 (9th Cir.1985), *amended,* 784 F.2d 1407 (9th Cir.1986). While the Court of Appeals for the Tenth Circuit has not spoken directly to the issue, it has allowed the prosecution of an independent § 1983 claim in conjunction with a Title VII claim, without comment. *Poolaw v. Anadarko,* 660 F.2d 459 (10th Cir.1981). *See generally* Annot., 78 A.L.R.Fed. 492 (1986).

The defendants, however, rely upon an exception to this non-preemption doctrine that some courts have recognized. That exception applies if the right allegedly infringed upon finds its source only in Title VII, and involves neither a constitutional claim nor a claim grounded upon another federal statute. In such instances, Title VII provides the exclusive remedy for a violation of the Title VII-created right. *Tafoya v. Adams,* 816 F.2d 555 (10th Cir. 1987), *cert. denied,* ⸺ U.S. ⸺, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987); *Day v. Wayne County Board of Auditors, supra.*

However, if Title VII is not the sole source of the right—if the conduct violates *both* Title VII and the Constitution or some other federal statute—the claim based on the other source may be asserted independently of any claim based upon Title VII. *See Day v. Wayne County Board of Auditors, supra.*

Here, Montoya's first claim alleged racial discrimination in violation both of the Four-

teenth Amendment's equal protection clause and of § 1981. Therefore, even if the facts alleged by Montoya would also constitute a violation of Title VII, that statute does not preclude Montoya from prosecuting an action pursuant to § 1981 or § 1983.

Likewise, as we read the allegations of Montoya's second claim, he asserts that the defendants violated his rights to equal protection and substantive due process of law under the Fourteenth Amendment (and, perhaps, his rights under § 1981), by failing to apply the City's personnel policies and procedures to him in an even-handed manner. Thus, he is not precluded from relying upon either § 1981 or § 1983 to obtain proper redress.

We conclude, therefore, that the trial court erred in holding that Title VII prevented Montoya from prosecuting either the first or second claims for relief.

## II. *Montoya's Employment as a Property Right*

■ The trial court dismissed Montoya's second claim for relief because he allegedly failed to demonstrate that he possessed a sufficient property interest in the promotion process to enable him to assert a constitutional claim based upon the due process clause of the Fourteenth Amendment. We conclude that this, too, was error.

The Fourteenth Amendment prohibits a state from depriving a person of "property" without due process of law. Thus, if a local public employee asserts that he has been deprived of some employment advantage in violation of due process of law, he must demonstrate that he has been deprived of a property right.

Proof that a public employee has a continuing right to employment constitutes proof that he has a property interest in his job. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

However, if the constitutional right that is alleged to have been invaded by the public employer is one other than that guaranteed by the due process clause, the existence of a property right in the public employee is irrelevant. Thus, adverse action against a public employee because of the exercise of his First Amendment rights constitutes the basis for a § 1983 claim, irrespective of the nature of the public employment involved. *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed. 2d 570 (1972). *See Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The same is true if the claim is that the public employee has been discriminated against because of his race in violation of the equal protection clause. *Poolaw v. Anadarko, supra.*

As we read the allegations of Montoya's second claim for relief, he relies, primarily, upon an asserted unequal application of the local policies and procedures, based upon his race. Hence, he has alleged claims based upon his equal protection rights under both the Fourteenth Amendment and § 1981. To the extent that he relies upon these two sources, the existence of some property interest in his job is irrelevant. *Poolaw v. Anadarko, supra.*

The allegations of Montoya's second claim also appear to assert that he was denied substantive due process of law. And, to rely upon such an assertion, Montoya must demonstrate that the matter involved a property interest of his. *Cleveland Board of Education v. Loudermill, supra.*

■ The defendants argue that, since Montoya possessed no *right* to be promoted, the failure to promote him did not deprive him of a property interest. This argument, however, misconstrues the nature of Montoya's claim.

Montoya's position was one under a civil service system, and the defendants concede that his right to continued employment in that position, as contrasted with any right to promotion, was a property interest for purposes of § 1983. Montoya also asserts, however, that he had an implied contract with the City, which incorporated the precepts of equal protection and due process, as well as the express provisions of the City's policies and procedures, requiring the City to *consider* him for promotion in accordance with those constitutional precepts and express policies.

Further, state law authorizes a local civil service employee to contest the results of a personnel action, if it is claimed that such action was taken in violation of the governing charter, ordinance, or policy. *See Spickard v. Civil Service Commission*, 31 Colo.App. 450, 505 P.2d 32 (1972). At least to this extent, therefore, the governing regulations may be looked upon as constituting an implied contract between the employee and the municipality. And, an implied contract, if established, constitutes a property interest for purposes of § 1983. *See Perry v. Sinderman, supra.*

We consider defendants' reliance upon *Bigby v. Chicago*, 766 F.2d 1053 (7th Cir. 1985), to be misplaced. There, the employees sought to rely upon a general statute, requiring promotions to be based on "merit," which the state itself had previously held not to create a property interest. *Sullivan v. Board of Fire & Police Commissioners*, 103 Ill.App.3d 167, 58 Ill.Dec. 604, 430 N.E.2d 636 (1981). Here, in contrast, Montoya relies upon specific regulatory provisions that are judicially enforceable by him.

### III. *Other Bases for Dismissal of Montoya's Claims*

In the trial court, the defendants argued that there were other reasons, beyond those expressed by that court, that required dismissal of Montoya's claims. It advances similar arguments in this court as alternative reasons for affirming the district court's judgment. To the extent that these assertions raise issues of law that may be determined on the present record on appeal, we address them.

### A. *Exhaustion of Administrative Remedies*

■ Defendants assert that, because Montoya did not appeal from the Director's

dismissal of his charge before the Commission, he did not exhaust his administrative remedies and, hence, may not pursue his § 1983 claim. We disagree.

Sections 24–34–301 through 24–34–406, C.R.S. (1988 Repl.Vol. 10A), provide a procedure by which an employee may obtain state administrative redress for employment discrimination based upon race. Under these procedures, any employee who claims to be aggrieved by racial discrimination in his employment may file a written "charge" with the Commission. Sections 24–34–306(1) and 24–34–402(1)(a), C.R.S. (1988 Repl.Vol. 10A).

Upon receipt of such a charge, the Director must make a "prompt investigation" of its allegations. If, by reason of this investigation, the Director concludes that there is "probable cause" to credit them, notice of the filing of the charge is given to the named respondent. If the matter is not resolved by conciliation at that point, the Commission may issue a formal complaint, in which event the matter is set for an evidentiary hearing. Section 24–34–306(2) and (4), C.R.S. (1988 Repl.Vol. 10A). As a result of this hearing, and based upon the evidence received, the Commission will enter its findings, conclusions and final order. Section 24–34–306(9) and (10), C.R.S. (1988 Repl.Vol. 10A). That order is subject to judicial review. Section 24–34–307, C.R.S. (1988 Repl.Vol. 10A).

On the other hand, if the Director, after the required administrative investigation, determines that the allegations of the charge are not supported by probable cause, she must dismiss the charge. Section 24–34–306(2), C.R.S. (1988 Repl.Vol. 10A). And, nothing in the *statutes* authorize the Commission to review the Director's dismissal of a charge or allows a claimant to appeal such an order to the Commission. A regulation adopted by the Commission, however, purports to authorize such an appeal. Colorado Civil Rights Commission Rule 10.6(A)(1), 3 Code Colo. Reg. 708–1. Defendants' argument, then, is that a claimant under the state statute must institute such an appeal as a condition precedent to the institution of a judicial action claiming a violation of federal rights.

However, the extent to which a plaintiff in a § 1983 action must comply with the procedural preconditions established by state law is a subject governed by federal law. *See Felder v. Casey*, 487 U.S. ——, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (state may not require plaintiff in § 1983 action filed in state court to comply with state statute mandating previous notice of claim).

The Supreme Court on numerous occasions has said, and in *Patsy v. Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) it decided, that a plaintiff need not exhaust state administrative procedures before instituting an action in reliance on § 1983.

A possible exception to the rule that a § 1983 plaintiff need not exhaust state remedies may exist if the claim is based on an asserted deprivation of a property interest without prior notice or hearing in violation of the right to procedural due process. If the deprivation results from the "random and unauthorized" actions of an individual, rendering a *pre*-deprivation hearing impossible or impracticable, a § 1983 claim will not be entertained, provided the state supplies an adequate *post*-deprivation remedy for the alleged procedural due process violation. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). *See Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).

Contrary to the defendants' assertions, however, we do not read the allegations of Montoya's amended complaint as asserting any procedural due process violations; it relies, instead, upon allegations of the violation of the equal protection clause, substantive due process, and § 1981. The general rule, and not the *Hudson–Parratt* exception, applies to his claims.

Hence, quite irrespective whether state law would have required Montoya to appeal

the Director's administrative decision before instituting an action based upon state law, he was not required to exhaust any state remedy before instituting suit under § 1983.

## B. Res Judicata

■ Defendants also claim that the Director's order dismissing the charge that Montoya filed with the Commission is res judicata of any issue of racial discrimination under § 1981 or § 1983. Again, we disagree.

A decision by a state administrative agency that has not been subject to direct judicial review will have a res judicata effect upon a subsequently asserted § 1983 claim only if (1) the agency has acted in a quasi-judicial capacity; (2) it has resolved disputed issues of fact properly before it which the parties have been given an adequate opportunity to litigate; and (3) the law of the state recognizes its preclusive effect. *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). In our view, the same rule must be applied to any § 1981 claim. *See United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). Applying this test to the Director's order of dismissal here results in the conclusion that his order does not have any preclusive effect.

The decision of the Director that the allegations of Montoya's charge were not supported by probable cause came after only an informal investigation under § 24–34–306(2), C.R.S. (1988 Repl.Vol. 10A). There was no evidentiary hearing of any type conducted, and Montoya was not given the right to cross-examine witnesses or otherwise formally to challenge the information relied upon by the Director. Further, the Director's decision did not constitute an "adjudication" of the "merits" of the charge and is not a "binding determination" of the issues raised under state law. *See Demetry v. Colorado Civil Rights Commission,* 752 P.2d 1070 (Colo.App. 1988). Thus, it is not res judicata of either Montoya's § 1981 or his § 1983 claim. *University of Tennessee v. Elliott, supra.*

## C. Qualified Immunity

■ The defendants also argue that the undisputed evidence shows that the individual defendants' actions were subject to a qualified immunity under § 1983. We conclude, as a matter of law, however, that the allegations of Montoya's complaint, if sustained by the evidence, would prevent the application of any claimed immunity.

A municipality, as an entity, enjoys no immunity under § 1983. *Owen v. Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

Individual defendants in a § 1983 action may, under appropriate circumstance, enjoy a qualified immunity. The immunity granted, however, is a narrow one; public employees are immune from liability based upon their own improper actions *only* if a reasonable person would not have been aware that those actions violated well-established constitutional rights. *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Montoya's first claim asserts that the individual defendants discriminated against him because of his race. Thus, in order to receive the benefit of any immunity for these actions (assuming the evidence supports Montoya's allegations), the individual defendants must assert that no reasonable public employee would be aware that the Constitution prevents racial discrimination by a municipality.

Likewise, his second claim asserts that policies that were generally applicable to the promotion process were not properly applied in his case. Again, therefore, the individual defendants, in order to rely upon the doctrine of qualified immunity, must assert that no reasonable public employee would be aware that applying public policies in a discriminatory fashion would violate the constitutional right to the equal protection of the laws.

We recognize that, in order to establish a violation either of the Fourteenth Amendment or § 1981, based upon allegations of racial discrimination, Montoya will be required to establish some intent to discriminate. *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (Fourteenth Amendment); *General Building Contractors' Assn v. Pennsylvania*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (§ 1981). If such an intent is not shown, a substantive claim will not be made out against any individual.

We conclude, however, consistent with the Ninth Circuit's opinion in *Lowe v. Monrovia, supra*, that any reasonable public employee would be aware of the impropriety of such intentional discrimination. Thus, if the evidence establishes an intentional discriminatory act on behalf of any individual, he would not be entitled to any immunity for that act.

### D. The Existence of a "Policy"

▮▮ The City asserts that the undisputed evidence reveals that the discrimination against Montoya, if any, was the result of the unauthorized actions of individuals and was not the result of any "policy" adopted by it, thus entitling the municipality, but not the individuals, to a summary judgment. We disagree that the evidence presented to the trial court would allow the entry of a summary judgment on this basis.

Section 1983 authorizes recovery if a deprivation of civil rights results from actions taken under "color" of some "statute, ordinance, regulation, custom, or usage." Under this provision, any action undertaken by a public employee in his official capacity, as distinguished from a purely private action, constitutes action under "color of law" and is, therefore, actionable against that individual. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), (individual liability attaches if wrongful act was possible only because wrongdoer was clothed with authority of the state), *over-ruled on other grounds, Monell v. Department of Social Services, supra.* See *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

A governmental entity, on the other hand, is not liable under § 1983 for the actions of its employees by application of the doctrine of respondeat superior. Rather, in order to hold the entity liable, it must be demonstrated that the actions were undertaken in accord with some "policy" of the local government. *Monell v. Department of Social Services, supra.* However, the policy necessary to be shown in order to render the entity liable need not be written; it may consist merely of a customary method of proceeding. *Monell, supra.*

Further, if the action taken is by a municipal official who has the final authority to establish policy over the subject matter of the action, then that official's decision, even if applicable only in a single situation, may result in the establishment of a policy sufficient to hold the municipality accountable. *Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (where county sheriff and county attorney had final authority to establish policy for executing capias, and they directed a trespass in violation of Fourth Amendment, trespass was undertaken in accordance with county policy); *Monell, supra* (municipality liable under § 1983 if acts are those of officials "whose edicts or acts may fairly be said to represent official policy").

A distinction must be drawn, however, between those officials having final authority over a subject matter and those who have merely been delegated the right to exercise discretion in a particular case by the policy-making official. The actions of the former render the entity liable; the actions of the latter do not. *Pembaur, supra.*

Here, Montoya's complaint, read most favorably to him, would implicate the chief of the department in the favoritism allegedly shown his son and the discrimination assertedly accorded Montoya. Yet, the record here does not contain the City's

charter or ordinances showing the nature of the authority for determining promotion policies that has been vested in the chief of the department, if he has any such authority. Neither does it contain any evidence of the City's past practices, if any, so as to allow any conclusion with respect to the chief's "de facto" authority in the form of a "custom."

Absent such evidence, this court cannot reach any conclusion upon the question of the existence of any policy for § 1983 purposes. Hence, resolution of the question of the liability of the City for the alleged improper actions of the individual defendants must await further evidentiary development of the issue.

The judgment is reversed and the cause is remanded for further proceedings consistent with the views set forth in this opinion.

VAN CISE and STERNBERG, JJ., concur.