Lucas MARTINEZ, individually and as an heir-at-law, and as the personal representative of the Estate of Faustin Martinez, Plaintiff–Appellant,

v.

James D. HARPER, individually and as a Colorado State Patrolman; Robert Copley, individually and as Trooper Commander; John N. Dempsey, individually and as Chief of the Colorado State Patrol; and David J. Thomas individually and as Executive Director of the Colorado Department of Public Safety, Defendants–Appellees.

No. 90CA0096.

Colorado Court of Appeals, Div. C.

Nov. 8, 1990.

Armando C de Baca, Paul A. Baca, Denver, for plaintiff-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Gregg E. Kay, First Asst. Atty. Gen., Denver, for defendants-appellees.

Opinion by Judge ROTHENBERG.

Plaintiff, Lucas Martinez, sought damages under the Civil Rights Act of 1871, 42 U.S.C. § 1983, for injuries sustained when his son, Faustin Martinez, was shot and killed by a Colorado State Patrol Officer, James D. Harper. Harper and other defendants moved for and were granted summary judgment based on a qualified immunity defense. On appeal by plaintiff, we affirm.

## I.

In March 1987, Faustin Martinez and Johnny Parker escaped from a jail in New Mexico after overpowering a prison guard, obtaining a rifle, and stealing his truck. Colorado State Patrol Officer Harper saw the men in the truck, radioed for assistance, and then tried to stop them. A high speed chase followed during which time Martinez drove and Parker pointed a rifle out of the truck window at Harper, causing Harper to take evasive action and crash into a bridge abutment.

Harper resumed the high speed chase for ten to twelve miles until the truck's engine blew up. Martinez and Parker drove the truck about fifty feet off the road, exited, and hid behind four to five feet high bushes.

When Harper arrived at the scene, both men were hidden from his view. Martinez had the rifle. Harper ordered the men to surrender twice and to drop the gun. They failed to respond to Harper.

According to Parker's deposition testimony, he and Martinez were close enough to talk among themselves. Parker confirmed that Martinez did refuse to surrender two times, but stated that, after the second warning, Martinez told Parker (but not Harper) that he had decided to surrender.

Thus, according to Parker, Martinez held the rifle in his right hand, held his left hand in the air, and was rising out of the bushes intending to surrender when Harper fired once and killed him.

Harper testified that neither man responded to his two orders to surrender and that he shot Martinez only after seeing him creep forward from behind the truck holding the rifle in his hand.

Plaintiff filed this action for damages claiming that Harper used excessive force by shooting and killing Faustin Martinez. He claims that the other defendants failed to adequately train and supervise Harper.

## II.

 An appellate court's review of a summary judgment decision involving the qualified immunity defense is analytically different than other summary judgment rulings. In *Hannula v. City of Lakewood*, 907 F.2d 129, 130 (10th Cir.1990), the court explained:

> "[W]e have emphasized that once a defendant raises a qualified immunity defense, the plaintiff bears a heavy burden.... Unlike other affirmative defenses, qualified immunity not only shields a defendant from liability, but is also intended to protect the defendant from the burdens associated with trial.... These burdens include distraction of officials from their governmental responsibilities, the inhibition of discretionary decision making, the deterrence of able people from public service, and the disruptive effects of discovery on governmental operations."

In sum, once a defendant raises a qualified immunity defense, the plaintiff assumes the burden of showing that the defendant violated a clearly established constitutional or statutory right of which a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

If the plaintiff fails to meet the burden of showing how the defendant violated a clearly established right, the motion for summary judgment must be granted.

> "[Qualified immunity] is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (original emphasis).

On the other hand, if the plaintiff does fulfill the burden of showing that the defendant violated a clearly established right, then defendant must demonstrate that no material issues of fact remain as to whether his actions were *objectively reasonable* in light of the law and the information that he possessed at the time. *See Hannula v. City of Lakewood, supra* and *Zuchel v. Spinharney*, 890 F.2d 273 (10th Cir.1989). *See also Abouzari v. Foster*, 795 P.2d 1386 (Colo.App.1990) (trial court erred *as a matter of law* in refusing to grant a defendant police officer qualified immunity from plaintiff's § 1983 action for false arrest).

### III.

With these important procedural considerations in mind, we now consider plaintiff's contention that officer Harper violated his son's right to be free from the use of excessive and deadly force.

In *Graham v. Connor*, 490 U.S. 386, ——, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443, 454 (1989), the United States Supreme Court set forth the general standard to be applied in § 1983 cases involving excessive force:

> "*All claims that law enforcement officers have used excessive force*—deadly or not—*in the course of an arrest*, investigatory stop, or other seizure of a free citizen *should be analyzed under the fourth amendment and its "reasonableness" standard,* rather than under a substantive due process approach." (emphasis added)

■ Thus, in analyzing excessive force cases, trial courts must first determine whether the seizure was reasonable. In making that initial factual determination, trial courts must balance the "nature and quality of the intrusion on the individual's fourth amendment interest" against the countervailing interests at stake. Importantly, the Supreme Court has said that the reasonableness inquiry must be made *objectively*, that is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor, supra.*

Furthermore, when considering the reasonableness of the officer's use of deadly force, the Supreme Court has stated:

> "Where an officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, *it is not constitutionally unreasonable to prevent escape by using deadly force.* Thus, if a suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, *deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given."* *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (emphasis added)

■ Here the trial court meticulously balanced Faustin Martinez' interest in being free from the intrusive seizure resulting in his death against the governmental interest in effective law enforcement. After doing so, the court stated:

> "Given all of the circumstances ... the court concludes that officer Harper's action in firing a single round at Faustin Martinez was "objectively reasonable" as a matter of law. Colorado law authorizes the use of deadly force in this circumstance. Any person in the position of the officer would reasonably feel himself in great danger."

The trial court noted that § 18–1–707(1), C.R.S. (1986 Repl.Vol. 8B) was in effect at the time of the shooting and specifically authorized a peace officer to use deadly force: "(a) To defend himself from what he reasonably believes to be the use or imminent use of deadly physical force; or (b) to effect an arrest or to prevent the escape from custody of a person whom he reasonably believes ... is attempting to escape by the use of a deadly weapon...."

It is undisputed that, at the time officer Harper fired his weapon, Faustin Martinez was an escaped prisoner who was attempting to complete his escape by the use of a deadly weapon. Harper knew that the two escapees had already overpowered a guard, and that they were armed and dangerous.

The men already had pointed the rifle at Harper during the chase and did so again at the scene. Harper reasonably feared for his own safety.

It is also undisputed that before officer Harper fired, he gave two loud, clear warnings advising the men to drop the gun and surrender or he would fire. One escapee was out of Harper's sight and Harper had no back up assistance. Importantly, the trial court found that the escapees were not cornered and that any momentary advantage Harper had could have quickly vanished. Under these circumstances, we agree with the trial court's conclusion that Harper's actions did not violate Faustin Martinez' constitutional rights.

## IV.

■ Plaintiff's main argument opposing summary judgment is that there is a genuine issue of material fact as to whether Martinez intended to surrender at the time he was shot. We disagree.

Parker testified that Martinez told him that he had decided to surrender, but there is no evidence indicating Martinez told Harper of his intent. The trial court stated:

"For the purpose of the motion before the court, it is not material whether (Martinez) was or was not rising to surrender. Whether or not the use of deadly force was justified is determined objectively by what was reasonable for the officer to do given what he saw and knew at that moment. No intention to surrender was conveyed to the officer by Martinez or Parker ... At the time he fired, officer Harper did not believe the escapees intended to surrender and there was no reason for him to believe they were about to do so. ... In reaching this conclusion, the court wishes to emphasize that the differences between the testimony of officer Harper and Johnnie Parker are not material to this result. The court has taken Parker's account as true in those instances where there are distinctions and the court assumes for purposes of this motion that Martinez did intend to surrender as he started to rise.... Taking the facts in the best possible light for the plaintiff, the court concludes that the differences are not material in the sense that they could alter the outcome under the law...."

The trial court's findings of fact and conclusions of law are amply supported by the record. We therefore hold that, as a matter of law, Harper was entitled to the defense of qualified immunity. *See Trejo v. Wattles*, 654 F.Supp. 1143 (D.Colo.1987) (officers' use of force was justified and reasonable as a matter of law); and *Garcia v. Wyckoff*, 615 F.Supp. 217 (D.Colo.1985) (under balancing test in an excessive force case, seizure determined to be reasonable as a matter of law). *Cf. Zuchel v. Spinharney*, 890 F.2d 273 (10th Cir.1989) (disputed facts precluded judge from determining whether officer's conduct in using deadly force was objectively reasonable; therefore, summary judgment properly denied).

## V.

The final issue is whether the trial court properly dismissed the claims against the remaining defendants alleging negligence in training and supervising Harper. Since we have already concluded that Harper's use of deadly force was objectively reasonable, the derivative claims against Harper's supervisor and superiors were also properly dismissed. *See City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

The judgment is affirmed.

HUME and RULAND, JJ., concur.