**NATIONAL CAMERA, INC.,**
**Plaintiff–Appellant,**

v.

Anita **SANCHEZ,** Jay L. **Fox,** Rolf F. **Anderson,** Glenda C. **Barry,** Reuben **Guttierez,** Julianne F. **Haefelt,** Lawrence E. **Hamilton,** Jane S. **Quimby,** and Raymond **Wilder,** in their official capacities, The State Board for Community Colleges and Occupational Education, and Robert **Smith,** in his official and individual capacities, Defendants–Appellees.

No. 90CA1924.

Colorado Court of Appeals,
Div. I.

Oct. 24, 1991.

As Modified on Denial of Rehearing
Nov. 21, 1991.

Certiorari Denied June 22, 1992.

Charles F. Kaiser, Denver, for plaintiff-appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Lisa LaBelle Scott, Asst. Atty. Gen., Denver, for defendants-appellees.

Opinion by Judge DAVIDSON.

Plaintiff, National Camera, Inc. (NCI), appeals from the trial court's dismissal pursuant to C.R.C.P. 12(b)(5) of its 42 U.S.C.

§ 1983 (1988) action against defendants, Anita Sanchez, Jay L. Fox, Rolf F. Anderson, Glenda C. Barry, Reuben Guttierez, Julianne F. Haefelt, Lawrence E. Hamilton, Jane S. Quimby, and Raymond Wilder (members of the board), in their official capacities, the State Board for Community Colleges and Occupational Education (SBCCOE), and Robert Smith, in his official and individual capacities. We reverse and remand for further proceedings.

SBCCOE is the governing authority for the state system of community colleges. At the times pertinent here, its function was to conduct occupational, technical, and community college programs pursuant to § 23–60–101, et seq., C.R.S. (1988 Repl.Vol. 9). Until this dispute arose, NCI had operated a private occupational school in Colorado since 1952 and was licensed to do business by SBCCOE under a certificate of approval issued pursuant to § 12–59–101, et seq., C.R.S. (1985 Repl.Vol. 5).

Section 12–59–108, C.R.S. (1985 Repl.Vol. 5) sets forth procedures to obtain new or renewed certificates of approval. In February 1988, in accordance with that statute, NCI applied to SBCCOE for renewal of its certificate which was due to expire on June 30, 1988. Smith, vice president of SBCCOE in charge of regulating private occupational schools, rejected the application on the grounds that NCI's submitted financial statements were not prepared by an independent accountant using a format which reflected accepted accounting principles and procedures as required by § 12–59–108(1)(c), C.R.S. (1985 Repl.Vol. 5).

In June, NCI submitted revised financial statements, but Smith rejected these on the grounds that they were inadequate in substance and again not prepared by an independent accountant. However, with SBCCOE's approval, Smith allowed NCI's certificate to continue past the June 30 expiration date on a month to month basis until October 15, 1988, to enable NCI to correct the deficiencies.

Again in September, NCI submitted revised financial statements. Although this time the statements were prepared by an independent accountant, Smith determined that they still did not provide full disclosure of NCI's financial position nor reflect accepted accounting principles. Thus, Smith advised NCI by letter that its certificate would expire on October 15, 1988.

In October, SBCCOE adopted Smith's recommendation that NCI's certificate be allowed to expire by operation of law pursuant to § 12–59–108(4), C.R.S. (1985 Repl. Vol. 5). Smith then notified NCI of SBCCOE's decision and of NCI's right to appeal that decision under § 24–4–105, C.R.S. (1988 Repl.Vol. 10A).

Proceeding under the Administrative Procedure Act (APA), § 24–4–101, et seq., C.R.S. (1988 Repl.Vol. 10A), NCI requested and duly received a hearing before an Administrative Law Judge (ALJ) in March 1989. On August 3, 1989, the ALJ issued an initial decision pursuant to § 24–4–105(14), C.R.S. (1988 Repl.Vol. 10A) finding that SBCCOE's action in letting NCI's license expire was, in effect, a revocation under § 24–4–104(7), C.R.S. (1988 Repl.Vol. 10A) and that SBCCOE had established no grounds to justify such a revocation nor provided a hearing in accordance with § 12–59–113, C.R.S. (1985 Repl.Vol. 5) and § 24–4–104, C.R.S. (1988 Repl.Vol. 10A). Thus, the ALJ ordered that NCI's certificate be restored pending further proceedings with SBCCOE.

Smith appealed the ALJ's decision to SBCCOE pursuant to § 24–4–105(15), C.R.S. (1988 Repl.Vol. 10A). Before SBCCOE's final decision, NCI moved for recusal on the grounds that SBCCOE's prior involvement in the case was so extensive as to render it "not impartial in fact or appearance." SBCCOE denied the motion and reversed the decision of the ALJ.

Thereafter, NCI filed this § 1983 action, alleging that SBCCOE, under color of state law, had violated its constitutional right to due process by failing to provide a hearing before its certificate expired pursuant to § 24–4–104 and § 12–59–113 and by failing to provide an impartial tribunal during the administrative appeal.

Specifically, NCI sought damages against SBCCOE and Smith, in his individual capacity, and injunctive relief against the

members of the board to require them to restore its certificate and to prohibit them from acting in a judicial capacity in any future revocation proceedings against NCI. Simultaneously with this § 1983 action, NCI filed an action for judicial review of the final agency decision pursuant to § 24-4-106, C.R.S. (1988 Repl.Vol. 10A).

The trial court denied NCI's motion to consolidate the two actions and granted SBCCOE's C.R.C.P. 12(b)(5) motion to dismiss the § 1983 claims on the grounds that SBCCOE is a state board and that, thus, under *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), SBCCOE and its employees are not "persons" subject to suit under § 1983. NCI filed this appeal and the judicial review was stayed pending the outcome here.

## I.

■ In addressing this appeal, we note that in reviewing the trial court's dismissal of the complaint for failure to state a claim, we must view the allegations of the complaint as true, *Denver & Rio Grand Western R.R. v. Wood*, 28 Colo.App. 534, 476 P.2d 299 (1970), and in a light most favorable to the plaintiff. *Bell v. Arnold*, 175 Colo. 277, 487 P.2d 545 (1971). The complaint cannot be dismissed unless it appears that the nonmoving party is entitled to no relief under any statement of facts which may be proved in support of the claims. *People ex rel. Kinsey v. Sumner*, 34 Colo. App. 61, 525 P.2d 512 (1974).

## II.

NCI first contends that the trial court erred in dismissing its § 1983 damage claims against SBCCOE and Smith based on *Will*.

Section § 1983 provides in relevant part: Every person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In *Will*, the United States Supreme Court held that states and arms of the state, which have traditionally enjoyed Eleventh Amendment immunity, are not "persons" within the meaning of § 1983 and that they therefore are not subject to liability for damages under § 1983 in either federal or state court. *See Dillingham v. University of Colorado Board of Regents*, 790 P.2d 851 (Colo.App.1989).

### A.

We disagree with NCI's contention that the trial court erred in determining that SBCCOE is an arm of the state and thus not subject to liability for damages.

■ The question whether an entity is to be treated as an arm of the state, immune from liability for damages by the Eleventh Amendment, or instead is to be treated as a political subdivision to which the Eleventh Amendment does not extend, depends, at least in part, upon the nature of the entity created by state law. *Mount Healthy City School District v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *see Stjernholm v. Colorado State Board of Chiropractic Examiners*, 820 P.2d 1166 (Colo.App.1991).

■ Applying this guideline here, we observe that, under Colorado law at the times pertinent here, SBCCOE was the state regulatory body of private occupational schools. Section 12-59-105, C.R.S. (1985 Repl.Vol. 5). It established state policy for occupational education and governed a state system of community colleges, § 23-60-102, C.R.S. (1988 Repl.Vol. 9), is designated as a state board, § 23-60-104(1)(b), C.R.S. (1988 Repl.Vol. 9), and is by definition a state agency, § 24-4-102(3), C.R.S. (1988 Repl.Vol. 10A). *See Stjernholm v. Colorado State Board of Chiropractic Examiners, supra.*

We conclude, therefore, that SBCCOE, being a state agency, is not a "person"

under § 1983 and, thus, no action for damages may be maintained against it under that statute.

### B.

Again basing its decision on *Will v. Michigan Department of State Police, supra,* the trial court dismissed NCI's § 1983 claim for damages against Smith in his individual capacity. Although NCI correctly argues that, under *Will,* state officials in their *official* capacities are not persons under § 1983, because we hold that Smith cannot be sued as a matter of law under the doctrine of qualified immunity, we agree with the decision of the trial court to grant Smith's motion to dismiss.

In his C.R.C.P. 12(b)(5) motion filed in the trial court, Smith asserted that he is protected from suit for his actions as vice president for SBCCOE by the doctrine of qualified immunity. The trial court did not reach and, thus, did not address this issue.

■ However, the determination of qualified immunity is a question of law. *Abouzari v. Foster,* 795 P.2d 1386 (Colo. App.1990). Thus, based upon the undisputed facts in the record, and assuming the allegations in the complaint to be true, we are able to decide that question here. *See Montoya v. City of Colorado Springs,* 770 P.2d 1358 (Colo.App.1989).

■ Qualified immunity protects governmental officials performing discretionary functions from personal liability unless their actions violate clearly established law of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Montoya v. City of Colorado Springs, supra.*

■ Once the defendant raises a qualified immunity defense, the plaintiff assumes the burden of identifying both the clearly established law that the government official is alleged to have violated and the conduct that violated that law. *Zuchel v. Spinharney,* 890 F.2d 273 (10th Cir. 1989); *Martinez v. Harper,* 802 P.2d 1185 (Colo.App.1990).

■ To overcome a qualified immunity defense, however, the plaintiff cannot simply identify a clearly established right in the abstract which the defendant has allegedly violated. *Hilliard v. City & County of Denver,* 930 F.2d 1516 (10th Cir.1991). Instead, the plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited. *Hannula v. City of Lakewood,* 907 F.2d 129 (10th Cir.1990). The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■ In its complaint, NCI alleges that its right to due process as guaranteed by the constitution and as secured by the APA was violated by Smith's failure to provide a predeprivation hearing. Although we agree with NCI's general proposition that the Constitution usually requires some kind of a hearing before the state deprives a person of property, *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), again, identifying a clearly established right in the abstract is not enough. *Hilliard v. City & County of Denver, supra.* NCI has the burden of showing that in this circumstance its right to such a hearing has been clearly established.

Although NCI cites no previous court decisions supporting its claim that Smith's actions constituted a due process violation, it does contend that its due process right to a predeprivation hearing is clear under the APA. Because the broad, remedial purpose of administrative procedure acts is to provide comprehensively for due process in administrative proceedings, *Milligan v. Board of Registration in Pharmacy,* 348 Mass. 491, 204 N.E.2d 504 (1965); *see Wong Yang Sung v. McGrath,* 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950), we look at the applicable provisions of the APA to determine whether that act applies to these circumstances, whether it requires a hearing, and, thus, whether Smith should have

been aware that his conduct was violative of NCI's constitutional rights.

NCI relies on § 24-4-104(6), C.R.S. (1988 Repl.Vol. 10A) which provides that no previously issued license shall be revoked until after a hearing, and § 24-4-104(7), C.R.S. (1988 Repl.Vol. 10A) which states that a denial of an application for renewal shall be treated in all respects as a revocation, to argue that the expiration of its certificate was in fact a revocation for which a prior hearing was required. In our view, however, it is less than certain that the APA requires the SBCCOE to conduct a predeprivation hearing when an existing certificate merely expires.

In fact, a close reading of § 24-4-104(7) reveals that only when a licensee has made "timely and sufficient" application for renewal shall an expiration be treated as a revocation. Here, because Smith determined that NCI's renewal application was not sufficient in form or substance as prescribed by § 12-59-108, it is not clear that his action actually constituted a revocation.

Moreover, even if we assume that the action against NCI was a revocation, NCI's right to a predeprivation hearing is still not clearly established. Although § 12-59-123 provides that procedures for the "giving of notices for and the conducting of any hearings on any matters within the authority of the state board as set forth in this article" shall be pursuant to the APA, it further provides, as to the granting of a hearing, that the state board shall determine "upon reasonable belief whether a hearing shall be conducted for the purpose of revoking the certificate of approval." Because this specific provision may control over the general provisions set forth in the § 24-4-104(6), see Denver v. Hansen, 650 P.2d 1319 (Colo.App.1982), it is less than certain that NCI has a right to a hearing.

Finally, we note that § 12-59-108, the statute upon which Smith relied in allowing NCI's certificate to expire without a hearing, requires no hearing. That statute provided in pertinent part:

(1) Any entity desiring to operate a private occupational school in this state shall make application for a certificate of approval to the state board.... Said application shall include ...

. . . .

(c) A current balance sheet, income and expense statement, and other supportive financial documentation incidental thereto, prepared by an independent public accountant or certified public accountant using a format which reflects accepted accounting principles and procedures ...

. . . .

(4) If [an application submitted by a school which holds a valid certificate of approval] is not submitted as set forth in this section, the school's existing certificate of approval shall expire on June 30 by operation of law.

When NCI applied for renewal of its certificate, Smith determined that NCI's financial statements were not prepared by an independent public accountant using a format that reflects accepted accounting principles and procedures as required by § 12-59-108(1)(c). Because, in his opinion, after several revisions NCI's financial documents remained inadequate, Smith notified NCI that its certificate would expire. NCI had no opportunity for a hearing prior to the expiration, but by a plain reading of the statute, none was required.

In our determination of the applicability of qualified immunity it is unnecessary to, and thus we do not, reach the issue of whether principles of due process actually require a predeprivation hearing under these circumstances. We merely conclude that such right, if any, is not so clearly established that Smith should have known that his actions violated that right.

Because qualified immunity is an immunity from suit rather than a mere defense from liability, Hannula v. City of Lakewood, supra; Martinez v. Harper, supra, the trial court did not err in dismissing NCI's damages claims against Smith.

III.

A.

We do agree, however, with NCI's final contention that the trial court erred in dis-

missing its § 1983 claim for prospective injunctive relief against the members of the board, again based on *Will.*

In fact, the United States Supreme Court clearly stated in *Will* that government officials in their official capacities, when sued for prospective injunctive relief, are "persons" under § 1983. *See Lucchesi v. State,* 807 P.2d 1185 (Colo.App.1990).

Under § 1983, to state a viable claim for relief, a plaintiff need only establish that the defendant deprived him of a federal right and that the defendant acted under color of state law. *Dillingham v. University of Colorado Board of Regents, supra.* Again, accepting as true the allegations in NCI's complaint, NCI claims that the members of the board, acting under state authority, deprived NCI of its constitutional rights to a predeprivation hearing before the expiration of its certificate and to an impartial tribunal during its administrative appeal.

### B.

Defendants argue, however, that because NCI commenced a separate action for judicial review, it was not error for the trial court to dismiss this § 1983 action. Specifically, they argue that the judicial review is the exclusive remedy for the review of an agency action, that relief sought by NCI under this § 1983 action duplicates the relief available through judicial review, and that NCI is receiving the due process to which it is entitled under that review. In effect, defendants are arguing that the existence of the postdeprivation remedy of judicial review is sufficient to satisfy procedural due process requirements. We conclude that the availability of judicial review pursuant to § 24–4–106 does not preclude this § 1983 action.

The general rule regarding availability of state remedies is that claimants may bring § 1983 claims without exhausting either state judicial, *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), or administrative remedies. *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Mosher v. City of Lakewood,* 807 P.2d 1235 (Colo. App.1991); *Patel v. Thomas,* 793 P.2d 632 (Colo.App.1990). Because the federal remedy is supplementary to the state remedy, *Zinermon v. Burch, supra,* NCI's judicial review is not its exclusive remedy, and, contrary to defendant's assertion, *Vigil v. Industrial Commission,* 160 Colo. 23, 413 P.2d 904 (1966) and *People v. District Court,* 200 Colo. 65, 612 P.2d 87 (1980) do not hold otherwise.

We acknowledge that in certain exceptional circumstances a § 1983 action may not be maintained because a state's adequate postdeprivation remedies may be all the process that is due. This exception occurs if a § 1983 claim is based on an asserted deprivation of a property interest in violation of the right to procedural due process and if this deprivation resulted from "random and unauthorized" conduct by officials rather than from some established state procedure. *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Montoya v. City of Colorado Springs, supra.*

However, this exception is inapplicable where there are state procedures in place for the officials to follow or where the state has delegated to the officials broad authority to effect the deprivation in question and the duty to provide procedural safeguards. Conduct under such circumstances is not "unauthorized" in the sense the term is used in *Parratt* and *Hudson. Zinermon v. Burch, supra. See Wilson v. Civil Town of Clayton,* 839 F.2d 375 (7th Cir.1988) (if the contested conduct represents "official policy," it is not random and unauthorized).

Here, NCI asserts in its § 1983 action that the board members deprived it of its certificate in violation of its right to procedural due process. However, although the deprivation was without a hearing pursuant to § 12–59–108 and allegedly without benefit of an impartial tribunal in violation of § 24–4–105, because the state had delegated to the SBCCOE board mem-

bers broad authority to effect such a deprivation in accordance with established procedure, their conduct cannot be characterized as "unauthorized." Thus, the *Parratt–Hudson* exception is inapplicable, and NCI may bring its § 1983 action despite the existence of another judicial remedy. *See Montoya v. City of Colorado Springs, supra.*

The judgment of dismissal of NCI's claims for damages against SBCCOE and Smith is affirmed. The judgment of dismissal of NCI's claims for injunctive relief against the members of the board is reversed, and the cause is remanded for reinstatement of that portion NCI's claim in accordance with this opinion.

PIERCE and SMITH, JJ., concur.