FILED
United States Court of Appeals
Tenth Circuit

December 27, 2007

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

DAVID TEIGEN; TIMOTHY BENNETT,

Plaintiffs - Appellants,

v.

NOLIN RENFROW, individually;
MADLINE SABELL, individually; JOE
ORTIZ, individually and in his official
capacity; GARY GOLDER, only in his
official capacity as Acting Director of
Prisons and successor of Nolin Renfrow;
JOHN DOES I THROUGH IV,

Defendants - Appellees.

No. 06-1283

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 05-cv-1569-REB-BNB)**

---

William S. Finger, Frank & Finger, P.C., Evergreen, Colorado, for Appellants.

Douglas J. Cox, Colorado Attorney General's Office, Denver, Colorado (David R.
DeMuro and Lana L. Steven, Vaughan & DeMuro, Denver, Colorado; Cathy
Havener Greer and William T. O'Connell, III, Wells Anderson & Race, LLC,
Denver, Colorado, with him on the brief), for Appellees.

---

Before **BRISCOE**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. Introduction

David Teigen and Timothy Bennett (collectively, "Plaintiffs") filed suit pursuant to 42 U.S.C. § 1983, against Nolin Renfrow, former Director of Prisons for the Colorado Department of Corrections ("DOC"); Madline SaBell, former Director of the Human Resource Office of the DOC; and Joe Ortiz, Executive Director of the DOC (collectively, "Defendants"). Plaintiffs also named Ortiz and Gary Golder, Acting Director of Prisons of the DOC, in their official capacities, as defendants in the action. In their complaint, Plaintiffs alleged Defendants acted in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment by engaging in a policy of blacklisting employees who maintained administrative appeals of state personnel actions.

The district court granted Defendants' motions to dismiss for failure to state a claim upon which relief could be granted. It concluded Plaintiffs had failed to allege the deprivation of a constitutionally protected property interest and had failed to overcome the presumption of government rationality applicable to cases of rational basis scrutiny. Plaintiffs now appeal the district court order granting Defendants' motions to dismiss. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms**.

## II.  Background

Plaintiffs were DOC employees at all times relevant to this appeal.  Prior to May 2003, Teigen was employed as a Case Manager III in the Territorial Correctional Facility located in Canon City, Colorado.  During the same period, Bennett held the position of General Professional III, Life Safety Officer, also in Canon City, Colorado.  Both Teigen and Bennett were certified employees of the classified state personnel system and were therefore entitled to certain protections under state law in the event of a layoff.  *See* Colo. Rev. Stat. § 24-50-124.

According to Plaintiffs' allegations, both were informed in May 2003 that their positions were being abolished as part of a statewide reduction in force.  Each was permitted to move into other positions by exercising retention rights provided under state law.  Teigen was ultimately transferred to another position in Canon City and Bennett was transferred to a position at Fort Lyon Correctional Facility in Fort Lyon, Colorado.  This facility is located three to four hours away from his permanent residence in Canon City.

Following the abolition of their positions and their subsequent reassignments, Plaintiffs filed appeals with the Colorado State Personnel Board.  In these appeals, Plaintiffs argued the DOC violated state law by abolishing their positions and improperly determining their retention rights.  Teigen was ultimately successful in his appeal.  An administrative law judge ("ALJ") entered an order concluding the DOC had illegally abolished Teigen's position and

eliminated his retention rights. The order reinstated Teigen to his position retroactive to May 2003 and required the DOC to pay all attorney fees and costs incurred by Teigen in his appeal. Bennett's appeal was still pending before the Personnel Board at the time the complaint in this matter was filed.[1]

Three months after the layoff process, on August 15, 2003, while Plaintiffs' appeals were pending with the Personnel Board, Renfrow sent an email to the wardens of all DOC facilities, which stated the following:

> Please be aware that one of the conditions of offering displaced staff a position in your facility is that they MUST drop their cases against us. Offering a person a position at the same pay and grade means their pay, tenure and status have not been adversely affected[;] therefore[,] they have no standing and allowing them to continue their appeals will just clog up the DPA with cases that have no merit. I will have [my administrative assistant] e-mail a list of staff that has filed appeals against the department.

The decision to send this email was agreed upon by each of the Defendants in an executive staff meeting. Four days later, Renfrow's administrative assistant sent another email that included a list of all employees who had filed appeals against the DOC. This list contained more than 100 names, including the names of both Plaintiffs. Plaintiffs allege these emails established an official DOC policy,

---

[1]In Plaintiffs' briefs to this court, they assert that after the dismissal of Plaintiffs' complaint, Bennett also prevailed on his claim before the State Personnel Board. Because the ALJ decision in Bennett's appeal was issued after the dismissal order and was not part of the amended complaint, however, the result of Bennett's appeal may not be considered by this court.

implemented by each of the Defendants acting in concert, of blacklisting all employees who maintained administrative appeals contesting the layoff process.

Based on this alleged blacklist, Plaintiffs assert employees who did not drop their appeals were targeted by the DOC and denied opportunities for career advancement, regardless of their qualifications. The ALJ in Teigen's appeal determined the August 15 email and the policy it implemented were retaliatory and contrary to applicable state law. Therefore, in addition to the remedies noted above, the ALJ ordered the email to be rescinded and directed the DOC to refrain from retaliating against Teigen for filing the appeal. Despite this order, however, Plaintiffs allege Defendants continue to apply a policy of denying employment opportunities to those employees who did not drop their administrative appeals.

Specifically, Teigen asserts he was repeatedly denied promotion opportunities as a result of the blacklist, despite his superior qualifications. Teigen alleges Defendants refused to use an eligibility list on which he placed in the top three candidates, intentionally allowing the list to expire so he could not obtain a promotion. Like Teigen, Bennett claims the blacklist resulted in him being denied a promotion which he was qualified to receive. He further asserts he was repeatedly denied the opportunity to transfer from Fort Lyon to an equivalent position in Canon City, where he permanently resides. Bennett also lists three additional instances in which he was targeted as a result of the blacklist, including the denial of a letter of recommendation, the reassignment of a prison dog

previously assigned to Bennett for training, and the refusal to grant his request for two days of funeral leave to attend the funeral of his father-in-law. Plaintiffs allege the sole reason for the denial of these employment opportunities was the implementation of the blacklist.

In addition, Plaintiffs' complaint challenges the issuance of Administrative Regulation 1450-12. This regulation, which Plaintiffs allege was promulgated by Ortiz, states in relevant part:

> It is the policy of the Department of Corrections (DOC) not to reward poor performance or behavior. Employees who have received a disciplinary action or have been found to have violated the DOC's prohibition on sexual harassment and/or illegal discrimination are not eligible to apply for promotions with the DOC for a period of 12 months. . . . Employees with disciplinary action under appeal are not eligible to apply.

Bennett was subject to disciplinary action in August 2003 and still had an appeal of the disciplinary action pending at the time of the complaint, more than twelve months after the action had been filed. Bennett alleges that in addition to the blacklisting policy, he was categorically excluded from promotion opportunities simply because his disciplinary action remained pending on appeal.

Plaintiffs filed suit against Defendants pursuant to 42 U.S.C. § 1983, alleging they had been unlawfully denied career opportunities as a result of the blacklist and the challenged administrative regulation, in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. They sought damages for economic losses, as well as an injunction against future

-6-

constitutional violations. Defendants filed separate motions to dismiss, arguing

Plaintiffs had not properly alleged a deprivation of a cognizable property interest

and had failed to allege facts sufficient to overcome rational basis review. The

district court granted the motions. In doing so, it agreed with Defendants that

Plaintiffs did not allege the deprivation of any rights that could constitute

property under the Fourteenth Amendment. It then concluded that with respect to

the equal protection claims, Plaintiffs had failed to overcome the presumption of

government rationality applicable to rational basis scrutiny.[2]

## III. Analysis

This court reviews *de novo* the district court's grant of a motion to dismiss

pursuant to Rule 12(b)(6), applying the same legal standard applicable in the

---

[2]On the day Plaintiffs' response to Defendants' motions to dismiss was due, Plaintiffs filed their second unopposed motion for an extension of time to submit their response. The district court denied the motion based on its own practice standards, which require any motion for an extension of time to be filed three or more business days before the response is due. Plaintiffs filed a response and, four days later, filed a motion to submit a supplemental response, simultaneously submitting the supplement to the original response. Concluding the supplemental response was simply an attempt to file a response brief out of time, the district court denied the motion and ordered the supplemental response to be stricken. Plaintiffs now argue the district court abused its discretion in denying the motions and striking the supplemental response. Given the prior extension of time granted to Plaintiffs and the unambiguous practice rule requiring such motions to be filed three days in advance, this court concludes the district court did not abuse its discretion. *See Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1193 (10th Cir. 1998) (reviewing denial of a motion for extension of time for abuse of discretion); *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1377 (10th Cir. 1996) (reviewing district court decision to strike reply brief as untimely for abuse of discretion).

district court. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). All well-pleaded facts, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the nonmoving party. *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005). Documents attached to the complaint are considered as part of the pleadings. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). In reviewing a motion to dismiss, this court must look for "plausibility in the complaint." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation omitted). Under this standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

## A. Due Process

Plaintiffs first argue the district court erred in dismissing their procedural and substantive due process claims. The Fourteenth Amendment prohibits any state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Thus, "to prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest."[3] *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000); *see also*

---

[3]Plaintiffs do not argue Defendants' actions deprived them of a constitutionally cognizable liberty interest. The deprivation of such an interest could, of course, also form the basis for a federal due process claim.

-8-

*Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) ("A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered."). In the context of a procedural due process claim, it is only after the plaintiff first demonstrates the existence and deprivation of a protected property interest that the plaintiff is constitutionally entitled to an appropriate level of process. *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998).

An individual has a property interest in a benefit for purposes of due process protection only if he has a "legitimate claim of entitlement" to the benefit, as opposed to a mere "abstract need or desire" or "unilateral expectation." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Such an interest arises not from the due process clause of the Constitution itself, but is "created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract." *Carnes v. Parker*, 922 F.2d 1506, 1509 (10th Cir. 1991). The plaintiff must demonstrate an "entitlement to a substantive right or benefit" supported by "rules or mutually explicit understandings . . . that he may invoke at a hearing." *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1085 (10th Cir. 2006) (quotation omitted). While the underlying interest is generally created by state law, "federal constitutional law determines whether that interest rises to the level of a legitimate claim of

entitlement protected by the Due Process Clause." *Town of Castle Rock v.*

*Gonzalez*, 545 U.S. 748, 757 (2005) (quotation omitted).

There is no dispute Plaintiffs had a protected property interest in continued

employment under state law. The Colorado Constitution provides:

> Persons in the personnel system of the state shall hold their
> respective positions during efficient service or until reaching
> retirement age . . . . A person certified to any class or position in the
> personnel system may be dismissed, suspended, or otherwise
> disciplined by the appointing authority upon written findings of
> failure to comply with standards of efficient service or competence,
> or for willful misconduct, willful failure or inability to perform his
> duties, or final conviction of a felony or any other offense which
> involves moral turpitude, or written charges thereof . . . .

Colo. Const. art. XII, § 13(8); *see also* Colo. Rev. Stat. § 24-50-125(1). This

provision limits the state's discretion to terminate Plaintiffs' employment except

for cause and, thus, gives rise to a protected property interest. *See Cleveland Bd.*

*of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985). This court can also assume

that in referring to employees' "respective positions" and limiting a public

employer's discretion to "otherwise discipline[]" an employee, the provision also

creates a property interest in a particular employment status. *See Hennigh*, 155

F.3d at 1254. Plaintiffs' property interest in their continued employment and

employment status, however, cannot form the basis for their due process claims

because they have not alleged they were terminated or deprived of their existing

employment status as a result of the alleged blacklisting itself, as opposed to the

initial layoff. Rather, as noted by the district court, Plaintiffs remain employed by the DOC, apparently at the same rank, and do not allege any decrease in compensation as a result of the alleged blacklist. While Plaintiffs correctly point out state law prohibits discipline without cause, such rules do not implicate federal due process concerns where, as here, Plaintiffs were not disciplined in such a way as to deprive them of a constitutionally protected property right. *Cf. Dill v. City of Edmond*, 155 F.3d 1193, 1206-07 (10th Cir. 1998) (concluding disciplinary change in work schedule did not trigger due process protection).

Plaintiffs also cannot seriously contend state law grants them a protected property interest in a promotion, transfer, or any of the other benefits sought in connection with their employment. Plaintiffs have pointed to no state statute or regulation that so restricts the government employer's discretion in making these employment decisions as to grant public employees a legitimate claim of entitlement to these benefits. *Hennigh*, 155 F.3d at 1253-54. In fact, the Colorado Court of Appeals has expressly held that because Colorado law grants the appointing authority discretion to choose among the three highest ranking applicants for a position, Colo. Rev. Stat. § 24-50-112.5(2)(b), a public employee has no due process right to be selected for promotion. *Conde v. Colo. State Dep't of Pers.*, 872 P.2d 1381, 1388 (Colo. Ct. App. 1994); *cf. Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 539-40 (10th Cir. 1995) (holding no property interest is implicated by transfer of employee where such a decision is left to the

-11-

discretion of the employer).  Accordingly, to the extent Plaintiffs' due process claim rests on the denial of the promotions, transfers, and other benefits themselves, they have demonstrated no entitlement to any particular decision and, as such, their claims must fail.  *See Hyde Park*, 226 F.3d at 1210 ("[A] right to a particular decision reached by applying rules to facts constitutes 'property.'").  Each of these "rights" is too speculative and dependent on the discretion of the decisionmaker to form the basis for a constitutionally protected property interest.  *See Schulz v. City of Longmont*, 465 F.3d 433, 444 (10th Cir. 2006) ("A benefit is not a protected entitlement if government officials may grant or deny it in their discretion." (quotation and alteration omitted)).

Plaintiffs nevertheless argue they possessed, and were deprived of, a protected property interest in the right to be *considered* for promotion and transfer according to the standards set forth in the Colorado Constitution and state statutes.  They contend the alleged blacklist completely disqualified them for promotion or transfer on an illegal ground and, thus, deprived them of the distinct right to be considered and evaluated based on merit, regardless of whether they possessed a property interest in actually obtaining the promotion or transfer.  In support of this argument, Plaintiffs cite various provisions of the Colorado Constitution and state personnel statutes which establish a merit-based system for the appointment and promotion of employees.

In addition to the "for cause" requirement for the dismissal of state employees cited above, Plaintiffs rely on the state constitutional requirements that "[a]ppointments and promotions to offices and employments in the personnel system of the state shall be made according to merit and fitness" and that employees "shall be graded and compensated according to standards of efficient service which shall be the same for all persons having like duties."  Colo. Const. art. 12, § 13(1) & (8).  Plaintiffs also cite statutory provisions which provide that (1) "any person has an equal opportunity to apply and compete for state employment," Colo. Rev. Stat. § 24-50-101(3)(a); (2) employee advancement and compensation should be based on "demonstrated ability and quality of performance," *id.* § 24-50-101(4); (3) a yearly employee evaluation "shall be used as a factor in compensation, promotions, demotions, removals, reduction of force, and all other transactions . . . in which considerations of quality of service are properly a factor," *id.* § 24-50-104(1)(c.5)(I); and (4) "[a]ppointments and promotions to positions shall be based on job-related knowledge, skills, abilities, competencies, behaviors, and quality of performance as demonstrated by fair and open competitive examinations," *id.* § 24-50-112.5(b).  Because none of these provisions of state law creates a cognizable property interest for purposes of constitutional due process, the district court properly dismissed the claims.

The subtle distinction between the right to be selected for promotion and the right to take part in the promotion process is insufficient to salvage Plaintiffs'

due process claims. This court has explained "it is well established that an entitlement to nothing but procedure cannot be the basis for a property interest."[4] *Robbins*, 438 F.3d at 1085 (10th Cir. 2006) (quotation omitted). This is because "[p]rocess is not an end in itself," but instead serves only "to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). Although detailed and extensive procedural requirements may be relevant as to whether a separate substantive property interest exists, *see Hennigh*, 155 F.3d at 1254, the procedures cannot themselves constitute the property interest. Here, Plaintiffs' claimed entitlement to be considered for promotion in accordance with the state system of merit is no more than a claim of entitlement to a fair process. Even assuming state law grants every state employee the right to be fairly considered for promotion, this right is not itself a substantive right, but rather a vehicle for arriving at the ultimate promotion decision. Where state law is not sufficiently restrictive to create a property interest in the underlying decision, there can be no property interest in the procedure used to make that decision.

---

[4]Plaintiffs also allude to the deprivation of their statutory right to appeal personnel decisions. Even if their allegations could be construed as a deprivation of this right, a questionable proposition considering both Plaintiffs proceeded with their appeals and Teigen ultimately prevailed, this alleged right is no more than a right to procedure and is therefore insufficient to form the basis for a constitutionally cognizable property interest. *See Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1085 (10th Cir. 2006).

Further, the state constitutional and statutory provisions on which Plaintiffs rely to support their claimed property interest are too vague and abstract to give rise to a protected property interest. A right under state law may establish a property interest only if it is specific and presently enforceable. *Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1569 (10th Cir. 1993). In contrast, the state law provisions in this case merely set forth a general system of hiring based on merit. Although the statutes provide for a yearly evaluation and require promotions to be made based on "job-related knowledge, skills, abilities, competencies, behaviors, and quality of performance," Colo. Rev. Stat. §§ 24-50-104(1)(c.5)(I), 24-50-112.5(b), Plaintiffs have pointed to no guidelines which establish how the evaluation should occur or the weight to be accorded to each factor. Without such details defining the contours of the alleged right and limiting the discretion of the state decisionmakers, these general provisions cannot give rise to a sufficiently definite property interest. *See Nunez v. City of Los Angeles*, 147 F.3d 867, 873 n.8 (9th Cir. 1998) (concluding plaintiffs did not have property interest in promotion procedures that merely "outline[d] [] relevant considerations" and did not significantly limit the discretion of the decisionmaker); *Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir. 1985) (holding the expectation that examinations used for promotions will be fair was "not so firm and definite an expectation as to be 'property' in a constitutional sense"). Thus, even if the right

-15-

to be considered for promotion could give rise to a substantive property right in an appropriate case, this is not such a case.

In *Montoya v. City of Colorado Springs*, the Colorado Court of Appeals addressed a similar argument by a plaintiff who alleged he was not properly considered for promotion to the position of fire captain of the city fire department. 770 P.2d 1358, 1360, 1362-63 (Colo. Ct. App. 1989). The court concluded specific city policies governing promotions within the fire department, when combined with the constitutional precepts of equal protection and due process, could establish an implied contract between the city and the plaintiff sufficient to give rise to a property interest in the promotion process. *Id.* at 1363; *see also Conde*, 872 P.2d at 1389 (stating *Montoya* "stand[s] for the proposition that a public employee has a right to be considered for promotion in a non-discriminatory manner"). The court reversed the trial court's dismissal of the plaintiff's due process claim based on a theory that this implied contract required the city "to consider him for promotion in accordance with those constitutional precepts and express policies." *Montoya*, 770 P.2d at 1363.

While it is generally state law that determines the extent of the entitlement to the benefit at issue, *Montoya* is not controlling on the question of whether Plaintiffs' have a federal constitutionally protected property interest in the right to be considered for promotion. This court first notes that although "decisions of a state's intermediate appellate courts are some evidence of how the state supreme

court would decide the issue," such decisions are not binding on this court. *Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1240-41 (10th Cir. 2003) (quotation omitted). This court need not rely exclusively on this principle, however, because the property interest in *Montoya* was based not on the general statutory and constitutional provisions relied upon in this case, but on "specific regulatory provisions" of local law adopted by the city and "judicially enforceable" by the plaintiff. *Montoya*, 770 P.2d at 1363. In concluding these express provisions may have created an implied contract between the employee and the city, the court explicitly distinguished the more general "merit" statute at issue in *Bigby*, which more closely resembles the Colorado constitutional and statutory provisions at issue in this case. *Id.* By limiting its reach to the specific city policies at issue, *Montoya* said nothing about whether the more general provisions of state law at issue in this case would have the same effect.

More importantly, even if state law would determine certified state employees have a right to be fairly considered for promotion based on state statute, it is federal law that determines whether such a right constitutes a property interest for purposes of the Fourteenth Amendment. *Castle Rock*, 545 U.S. at 757. Because the right to be considered for promotion and other employment benefits is not a substantive right but a procedural one, a statutory entitlement to such consideration cannot form the basis for a federal due process claim. *Cf. id.* at 766 (explaining it is unclear whether "an individual entitlement

-17-

to enforcement of a restraining order could constitute a 'property' interest" because "[s]uch a right would not . . . resemble any traditional conception of property").[5] The district court, therefore, properly dismissed both Plaintiffs' substantive and procedural due process claims.

## B. Equal Protection

Plaintiffs assert the district court erred in dismissing their equal protection claims. They argue that as members of a class of employees who filed appeals with the State Personnel Board, they were treated less favorably than those employees who did not file appeals of the layoff process. The district court dismissed this claim, concluding the alleged classification was rationally related to the legitimate state goal of streamlining the administrative process by disposing of moot appeals. Although the complaint also challenged the promulgation of Administrative Regulation 1450-12 on equal protection grounds, Plaintiffs never mention this regulation in their briefs. The issue is therefore forfeited. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th

---

[5]Contrary to Plaintiffs' assertions, the decision by the administrative law judge in Teigen's appeal is not entitled to res judicata or collateral estoppel effect because it addressed only whether the abolition of Plaintiffs' positions and subsequent blacklist were illegal under state law. It did not consider the separate issue of whether Plaintiffs possessed, and were deprived of, a constitutionally protected property interest. *See Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 986-87 (10th Cir. 2002) (noting that under Colorado law, res judicata requires identity of subject matter and identity of claims for relief); *Jiron v. City of Lakewood*, 392 F.3d 410, 416 (10th Cir. 2004) (requiring identity of issues for collateral estoppel under Colorado law).

Cir. 1994). This court will consider only the equal protection claims relating to the August 15 email and the resulting blacklist.

The Equal Protection Clause of the Fourteenth Amendment prohibits any state from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Clause "creates no substantive rights. Instead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). Because Plaintiffs do not claim they are members of a suspect class or that the challenged classification burdens a fundamental right, this court applies rational basis scrutiny. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998). Under this standard, this court will uphold a government classification if it is "rationally related to a legitimate government purpose or end." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1031-32 (10th Cir. 2007). An equal protection claim will fail "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Copelin-Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1255 (10th Cir. 2005) (quotations omitted). In the context of a motion to dismiss under 12(b)(6), this court accepts all of the allegations in the complaint as true and then considers these "facts" according to the deferential rational basis standard. *See Brown v. Zavaras*, 63 F.3d 967, 971-72 (10th Cir. 1995). "To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to

-19-

overcome the presumption of rationality that applies to government classifications." *Id.* (quotation omitted).

Plaintiffs have not met this burden with respect to the alleged blacklisting policy. Although Plaintiffs allege differential treatment between two classes of state employees,[6] their allegations are insufficient to establish such a policy was arbitrary and wholly irrational in a constitutional sense. This court agrees with Plaintiffs that Defendants' asserted justification of weeding out moot appeals is questionable because there is no indication the appeals brought by Plaintiffs and other employees were moot or otherwise meritless at the time of the alleged blacklisting.[7] Nevertheless, this court need not fully address this argument

---

[6]In their reply brief, Plaintiffs cite a number of cases which address the "class of one" theory of equal protection recognized by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Although "the number of individuals in a class is immaterial for equal protection analysis," *id.* at 564 n.*, it is unclear how the "class of one" rationale would apply where, as here, Plaintiffs' claim is based on their membership in an identifiable group. *See Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 848-49 (10th Cir. 2005) (applying "class of one" analysis where plaintiffs did not allege they were part of an identifiable group). Because this court concludes the challenged policy is supported by a rational basis, we need not fully consider the contours of a "class of one" claim in this case.

[7]It appears that both the Defendants' arguments on appeal and the district court's analysis below focused exclusively on the language of the August 15th e-mail and, therefore, failed to adequately account for the blacklisting policy alleged by the Plaintiffs. Standing alone, the language of the August 15th e-mail sets forth a very limited policy: before an individual actively litigating the propriety of a prior DOC employment action can be hired, promoted, or transferred, that individual must drop his or her administrative appeal. According to the complaint, however, Defendants implemented that policy through the

(continued...)

because in applying rational basis scrutiny, "we are not bound by the parties'

arguments as to what legitimate state interests the [classification] seeks to further.

In fact, this Court is *obligated* to seek out other conceivable reasons for validating

[a state policy]." *Powers v. Harris*, 379 F.3d 1208, 1217 (10th Cir. 2004)

(quotation omitted).  Thus, this court must independently consider whether there

is any conceivable rational basis for the classification, regardless of whether the

reason ultimately relied on is provided by the parties or the court.  *Id.*  This

determination is a legal question which need not be based on any evidence or

empirical data.  *See Schutz v. Thorne*, 415 F.3d 1128, 1135-36 (10th Cir. 2005).

Even accepting Plaintiffs' allegation that Defendants denied them

employment opportunities solely because they maintained administrative appeals,

such a policy does not violate the Equal Protection Clause.  Contrary to the

implicit premise of Plaintiffs' claim, it is not irrational or illegitimate for a state

employer to treat a class of employees differently because they have actively

---

[7](...continued)
creation of a blacklist and mandated that nobody on the list could even be
considered for a promotion or transfer.  That is, according to Plaintiffs'
allegations, the blacklisting policy prevented them from obtaining the very
appointments Defendants contend would have made their appeals moot.  While
Defendants' stated rationale of weeding out moot appeals may have justified a
requirement that employees drop their appeals *after* being offered a position, such
a rationale seems wholly unrelated to Plaintiffs' allegations they were disqualified
from consideration for the positions in the first place.  Further, Teigen's success
in his administrative appeal supports the conclusion that his appeal was not moot
at the time he was allegedly blacklisted.  Thus, based on the allegations in the
complaint, there is no apparent connection between the employees whose names
appeared on the blacklist and those employees who proceeded with moot appeals.

litigated against the state. Plaintiffs cite no authority for the proposition that such a policy is so entirely unrelated to any legitimate state end that it may give rise to an equal protection claim. Indeed, a state employer could have a number of conceivable rational justifications for not wishing to promote, or otherwise provide career advancement opportunities to, employees who are its adversaries in administrative proceedings.

For example, a government employer may wish to maintain the status quo during the pendency of the administrative proceedings to avoid undermining its litigation strategy or inserting unforeseen complexities into the administrative process. When an employer is engaged in litigation with an employee regarding personnel decisions, the promotion of that employee could potentially undercut the employer's defenses and negatively impact its prospects of success in the litigation. At the very least, the promotion of an employee in the midst of an ongoing appeal could very well alter the course of the proceedings and the practical consequences of any remedy ultimately awarded. A government employer surely has a legitimate state interest in avoiding the unanticipated difficulties that might result from taking such employment actions while the appeal is ongoing. *See Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir. 1999) (characterizing "administrative ease" as "a reason sufficient to withstand rationality review").

Further, the promotion or transfer of an employee who has actively challenged a prior personnel decision could create division in the workplace between the class of employees who maintained appeals and the class of employees who did not. Those employees who did not file administrative appeals of personnel decisions and were subsequently passed over for promotion or transfer in favor of an employee who has litigated prior personnel decisions could conceivably question whether the individual promoted was, in effect, receiving an undeserved reward for previously engaging in litigation against the employer. Such a decision could therefore have the unintended effect of encouraging litigation among all employees. In addition, the resulting resentment and division among the two classes of employees could have a negative impact on working relationships and impede the efficient functioning of the agency. Thus, a policy of not promoting employees with ongoing administrative appeals is rationally related to the legitimate government purposes of maintaining workplace harmony and avoiding disruption. *See Indep. Charities of Am., Inc. v. Minnesota*, 82 F.3d 791, 797-98 (8th Cir. 1996) (concluding state has a legitimate interest in "minimizing workplace disruption"). Even after the appeal has been completed, a state employer may legitimately wish to avoid further enmeshing itself in employment relationships with those employees who have previously challenged the state's personnel decisions. It can hardly be considered arbitrary for an employer to decide the state interest of administrative efficiency is better served

-23-

by filling positions with employees who do not have a history of challenging the employment decisions of the very agency promoting them.

At its base, Plaintiffs' argument boils down to the assertion that because the alleged blacklisting policy is at odds with Colorado law, the Defendants had no legitimate basis for maintaining the policy. It must be emphasized, however, that the question of whether a policy is lawful is separate from the question of whether the policy is constitutional.[8] *See Davoll*, 194 F.3d at 1146 (concluding that a Denver employment policy that violated the ADA was nevertheless rationally related to a legitimate government purpose and, therefore, not violative of the Equal Protection Clause); *Welsh v. City of Tulsa*, 977 F.2d 1415, 1420 (holding that policy of refusing to hire handicapped firefighters was consistent with Equal Protection Clause, even if such a policy might violate the Rehabilitation Act). A policy of blacklisting all employees who have challenged personnel decisions will often run afoul of state or federal laws that prohibit employers from retaliating against employees who exercise certain statutory rights. In such circumstances, however, the proper claim is not an equal protection claim brought in federal court, but a claim under the applicable anti-

---

[8]This court again rejects Plaintiffs' contention that the decision by the ALJ in Teigen's administrative appeal is entitled to res judicata effect because the appeal addressed only state law issues and never considered the equal protection claim raised here. The ALJ's conclusion that the policy could not be justified under state law has no bearing on the separate question of whether the policy was unconstitutional. *See Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir. 1999).

retaliation law brought in the forum designated to redress such harm. The mere illegality of a retaliatory action under a separate body of law does not make the resulting classification so illegitimate, irrational, or arbitrary as to violate the Equal Protection Clause. *Davoll*, 194 F.3d at 1145-46; *Welsh*, 977 F.2d at 1420.

If this court were to hold otherwise, every claim of unlawful retaliation against a government employer, whether brought under state or federal law, could be transformed into an equal protection claim simply by defining the relevant class as consisting of those employees who challenged the government's unlawful employment policies. *Cf. Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989) (refusing to recognize "a class of employees who stand up for their constitutional rights . . . for purposes of the equal protection clause"). The kind of bare retaliation claim at issue in this case simply cannot form the basis for a constitutional equal protection violation. *See Maldonado v. City of Altus*, 433 F.3d 1294, 1308 (10th Cir. 2006) ("[A] theory of liability for retaliatory conduct does not come within § 1983." (quotation and alteration omitted)); *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) ("A pure or generic retaliation claim . . . does not implicate the Equal Protection Clause."); *Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 100 F.3d 1287, 1296 n.8 (7th Cir. 1996) ("[The Equal Protection Clause] does not establish a general right to be free from retaliation."); *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) ("[W]e know of no court that has recognized a claim under the equal protection clause for

-25-

retaliation . . . ."). *Cf. also Gray*, 885 F.2d at 414 ("Section 1983 provides a remedy for deprivation of constitutional rights.  It supplies no remedy for violations of rights created by Title VII.  Only when the underlying facts support both a Title VII and a constitutional deprivation claim can a plaintiff maintain an action under § 1983 and bypass the procedural requirements of Title VII." (citations omitted)).

For purposes of the Equal Protection Clause, Defendants have a legitimate interest as a state employer in preventing employees who have invoked the administrative appeal process from moving into new positions within the agency or receiving other discretionary employment benefits.  Accepting all well-pleaded facts in the complaint as true, there can be no dispute that the alleged blacklist policy was rationally related to this interest.  Plaintiffs' conclusory allegations that the classification lacks a rational basis and was created with malicious intent are insufficient to overcome the presumption of government rationality in this case.  *See Brown*, 63 F.3d at 972 (holding conclusory allegations, without corresponding factual basis, were insufficient to withstand motion to dismiss); *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992) (concluding "assertion that the policy is 'without rational basis' is insufficient to overcome the presumption of rationality").  Accordingly, Plaintiffs have not adequately stated a claim under the Equal Protection Clause and the district court did not err in dismissing their equal protection claims.

## IV. Conclusion

For the foregoing reasons, this court **affirms** the district court's dismissal of Plaintiffs' due process and equal protection claims.