FILED
United States Court of Appeals
Tenth Circuit

September 3, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WASATCH PEDICAB CO. L.L.C.,

     Plaintiff-Appellant,

v.

SALT LAKE CITY CORPORATION, a
municipal corporation; LARRY
SPENDLOVE; TIM RODRIGUEZ;
MAYOR ROSS C. ANDERSON, also
known as ROSS C. "ROCKY"
ANDERSON; SAM GUEVARA; and
MELONIE REIF,

     Defendant-Appellees,

DAVID DOBBINS,

     Defendant.

No. 08-4119
(D.C. No. 2:07-CV-00546-TS)
(Dist. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **SEYMOUR** and **LUCERO**, Circuit Judges.

---

The district court dismissed Wasatch Pedicab Company LLC's ("Wasatch")

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with FED. R. APP. P. 32.1 and 10TH
CIR. R. 32.1.

42 U.S.C. § 1983 claim against the Salt Lake City Corporation (the "City") for violation of the Equal Protection Clause of the Fourteenth Amendment for failure to state a claim.[1]  We affirm.

Wasatch was founded in 2004.  Before Wasatch invested in its pedicab business, Larry Spendlove, a City official, told Wasatch that to obtain a revocable permit it would need to carry a policy providing $1 million dollars in aggregate personal injury coverage and $200,000 in property damage coverage.  Mr. Spendlove later informed Wasatch that the requirement had changed to $2 million in aggregate personal injury coverage and $500,000 in property damage coverage. On February 11, 2005, Wasatch entered into a Revocable Permit and License Agreement ("Revocable Permit") with the City to operate pedicabs.  The Revocable Permit was renewed twice, extending it through December 2006.  The requirements of $2 million in aggregate personal injury coverage and $500,000 in property damage coverage remained in place until January 2006 in spite of repeated promises by City officials, including the Mayor, to reduce them.  On January 9, 2006, the City informed Wasatch that the insurance requirement would be raised to $3 million and that failure to provide an updated certificate within three weeks would be considered a default of the agreement with the City.

Wasatch alleged it "discovered that the maximum amount for which the

---

[1]  Wasatch does not appeal the dismissal of its claims alleging violation of its rights to due process and free speech.

City could possibly be held liable under the [Governmental Immunity] Act was

$2.3 million[2] for personal injury and $233,000 for property damage [sic]."

---

[2] The public records indicate the amount is $2 million not $2.3 million. City ordinances require persons operating a public transportation for hire business to obtain a certificate of public convenience and necessity, which in turn requires proof of insurance.

> No certificate of public convenience and necessity shall be issued or continued in operation, unless there is on file with the city recorder a certificate of insurance executed by an insurance company . . . that there is in full force and effect vehicle liability insurance covering the operation of applicant's transportation vehicles with minimum limits of two hundred fifty thousand dollars ($250,000.00) for one person in any one occurrence, five hundred thousand dollars ($500,000.00) for two (2) or more persons in any one occurrence and one hundred thousand dollars ($100,000.00) for property damage *or such greater amounts as set forth in section 63-30-34, Utah Code Annotated, 1953, as amended, or its successor* [section 63-30-34 (1953) was repealed in 2004 and was succeeded by section 63 G-7-604 (2009)] *or such greater amounts as may be required by the Utah department of transportation* or the United States department of transportation. . . . (Ord. 24-99 § 2, 1999: Ord. 51-89 § 1, 1989).

Salt Lake City Code of Ordinances, § 5.05.120 (emphasis added). Utah Code §§ 63G-7-604 (1)(c) and (d) (2009) require:

> (1) (c) Except as provided in Subsection (2) and subject to Subsection (3), if a judgment for property damage against a governmental entity, or an employee whom a governmental entity has a duty to indemnify, exceeds $233,600 in any one occurrence, the court shall reduce the judgment to that amount, regardless of whether or not the function giving rise to the damage is characterized as governmental.
>
> (d) Subject to Subsection (3), there is a $2,000,000 limit to the aggregate amount of individual awards that may be awarded in relation to a single occurrence.

Compl. para. 32. It also alleged that "its efforts to discover the insurance coverage required of taxicabs and horse carriages in Salt Lake City were frustrated by the City's non-enforcement of City Code 5.05.120, which requires all recipients of a Certificate of Convenience and Necessity to keep their insurance certificates on file at all times with the City Recorder's office." *Id.* para. 33. Wasatch attached certificates of insurance filed by several transportation companies indicating they actually carried less insurance than required by the City.

The City has ordinances for other public transportation-for-hire businesses, *e.g.*, horse-drawn carriages and taxicabs, and told Wasatch that it would pass an ordinance for pedicabs if Wasatch proved its usefulness. Wasatch attempted to have the City change the insurance requirements for its Revocable Permit. In January 2006, the City sent Wasatch a draft ordinance. The proposed ordinance would have required pedicab operators to complete fingerprinting, police station photos, a five-year employment history, and an extensive criminal background check. Wasatch voiced its concern that the licensure requirements for pedicab operators were greater than those imposed on operators of horse-drawn carriages. The City responded that it "was operating under an assumption that pedicabs are more dangerous than horse carriages," but did not offer any evidence to support this claim. *Id.* para. 40. Wasatch alleges "the rate of incidents causing injury and/or property damage is substantially lower for pedicabs than for horse

-4-

carriages and taxicabs." *Id.* para. 41.

By February 2007, Wasatch did not have a permanent operating permit, advertising revenue, funds to pay the insurance premium required under its temporary permit, or an ordinance governing pedicab operations. Therefore, it had to let the revocable permit lapse and cease operation. Wasatch contends the City violated the Equal Protection Clause by requiring an excessive insurance amount that was not rationally related to a legitimate government interest but aimed instead at forcing the company out of business. The district court granted with prejudice the Rule 12(b)(6) motion filed by defendants to dismiss for failure to state a claim. We review that dismissal *de novo*. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007).

Wasatch's equal protection argument before the district court was solely focused on the lack of a rational relationship between a legitimate City interest and the amount of the required aggregate coverage insurance; *i.e.*, the $2 and (arguably) $3 million requirements. In its reply brief, however, Wasatch for the first time asserted the City's allegedly wholly arbitrary and irrational requirement for the separate $500,000 property coverage insurance as an independent basis for its equal protection claim. Because Wasatch neither apprised the district court of this issue nor raised it in its opening brief, we decline to address it. *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994). We limit our analysis to the rationality of the City's aggregate coverage insurance requirement.

The Fourteenth Amendment prohibits any state from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Wasatch claims the City violated its equal protection rights when it "imposed licensure and insurance requirements on Wasatch that are more onerous and burdensome than those imposed on similarly situated transportation companies, including horse drawn companies and taxi cab companies." Compl. para. 67. Because Wasatch is neither a member of a suspect class nor claims the classification it challenges burdens a fundamental right, we apply rational basis scrutiny. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998).

Supreme Court "cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Wasatch contends it has been intentionally and without rational basis treated differently from horse-drawn carriage and taxicab companies. The City responds that Wasatch's claim was properly dismissed because Wasatch is not similarly situated to other transportation companies and because it is rational to believe pedicabs expose its citizens to a higher degree of danger given that pedicabs, unlike taxicabs, are open and do not have airbags, and are smaller and lower to the ground than horse-drawn carriages.

"In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). "[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Id.* at 315. The City does not need to "articulate its reasoning at the moment a particular decision is made." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001). Nevertheless, the City "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985). Moreover, "some objectives – such as a bare desire to harm a politically unpopular group – are not legitimate state interests." *Id.* at 446-47 (citation, internal alterations, and quotation marks omitted).

In reviewing a Rule 12(b)(6) motion to dismiss, we look for "plausibility in the complaint," accept all well-pleaded allegations as true, and then consider "these 'facts' according to the deferential rational basis standard" to determine whether plaintiff had alleged sufficient facts "to overcome the presumption of rationality that applies to government classifications." *Teigen*, 511 F.3d at 1078, 1083. The district court, relying on the City's assertion that pedicabs are more

dangerous than taxicabs and horse-drawn carriages, concluded that the City's $2 million insurance requirement[3] was rationally related to a legitimate interest.

While Wasatch's complaint alleges that the rate of pedicab accidents is substantially lower than those of horse-drawn carriages and taxicabs, it does not allege that those accidents create an equal or lesser degree of danger. Because Wasatch is attacking the rationality of the City's classification, it has "the burden to negative every conceivable basis which might support it." *Powers v. Harris*, 379 F.3d 1208, 1217 (10th Cir. 2004) (internal brackets and quotation marks omitted). Wasatch has failed to do so. In particular, the complaint is silent as to the degree of danger pedicabs cause relative to other public transportation companies for hire. Assuming without deciding that Wasatch is similarly situated to the other transportation companies the City licenses, we conclude Wasatch has not alleged facts sufficient to overcome the presumption of rationality that applies to the City's insurance requirement.[4] *See Teigen*, 511 F.3d at 1083.

Wasatch does not contend the district court should have allowed it to

---

[3] The district court based its conclusion on the $2 million requirement because the amount was not actually raised to $3 million while Wasatch was in business.

[4] Wasatch asserts the district court erred "in refusing to apply the Supreme Court's holding in *City of Cleburne, Tex. v. Cleburne Living Center* to the instant case." Aplt. Br. at 11-13. However, the district court did not refuse to apply *Cleburne* but concluded that the allegations of Wasatch's complaint are distinguishable from the facts of *Cleburne*. *See Wasatch Pedicab Co. v. Salt Lake City Corp.*, No. 2:07-CV-546, 2008 WL 2224830, at *7 (D. Utah May 27, 2008).

amend its complaint pursuant to Federal Rule of Civil Procedure 15 before it dismissed the equal protection claim, nor does it claim the district court should have dismissed the complaint without prejudice.  Accordingly, on this record, we **AFFIRM** the district court's decision.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge