**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CLINTON J. DAWSON; JANELL
DAWSON,

     Plaintiffs - Appellants,

v.

LITTON LOAN SERVICING, LP;
OCWEN LOAN SERVICING, LLC,

     Defendants - Appellees.

No. 15-1328
(D.C. No. 1:12-CV-01334-CMA-KMT)
(D. Colo.)

_____

CLINTON J. DAWSON; JANELL
DAWSON,

     Plaintiffs - Appellants,

v.

GOLDMAN SACHS & COMPANY,

     Defendant - Appellee.

No. 15-1337
(D.C. No. 1:13-CV-02030-CMA-KMT)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **HARTZ**, and **McHUGH**, Circuit Judges.
_____

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Clinton and Janell Dawson appeal district court orders granting summary judgment to Litton Loan Servicing, LP ("Litton") and Ocwen Loan Servicing, LLC ("Ocwen"), and dismissing a complaint filed against Goldman Sachs & Co. ("Goldman") in these related cases. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.[1]

**I**

The parties are familiar with the facts of these cases, which we need not recite in detail. Litton was the servicer of plaintiffs' mortgage. In December 2009, Litton denied plaintiffs a permanent loan modification. Litton sent a Notice of Default and Intent to Accelerate in January 2011. Plaintiffs failed to cure the default, and Litton initiated foreclosure proceedings. The property was sold at a public auction in August 2011 to U.S. Bank National Association ("U.S. Bank"). After the foreclosure sale, Ocwen acquired Litton. U.S. Bank pursued eviction proceedings, and plaintiffs ultimately vacated the property.

Plaintiffs filed suit against Litton and Ocwen (the "Litton litigation"), asserting claims for tortious interference with a contract and/or expectancy, intentional infliction of emotional distress ("IIED"), and violation of the Colorado Consumer Protection Act ("CCPA"). The district court dismissed the IIED claims and subsequently granted

---

[1] Prior to oral argument, the parties were directed to file responses stating the legal basis for this court's subject matter jurisdiction and the citizenship of all parties. Having received the parties' responses, we are satisfied that the requirements of diversity jurisdiction are met. See 28 U.S.C. § 1332; see also Americold Realty Tr. v. Conagra Foods, Inc., 136 S. Ct. 1012, 1015 (2016) (citizenship of unincorporated entity depends on the citizenship of all its members).

summary judgment to Litton and Ocwen on the remaining claims. During the pendency of the Litton litigation, plaintiffs instituted a separate action against Goldman based on the same operative events (the "Goldman litigation"). They allege that Goldman had a "controlling interest" in Litton and demanded that Litton deny loan modifications. After granting summary judgment in the Litton litigation, the district court dismissed the Goldman litigation. Plaintiffs timely appealed the summary judgment order in the Litton litigation and the dismissal order in the Goldman litigation.

## II

We review the grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. Yousuf v. Cohlmia, 741 F.3d 31, 37 (10th Cir. 2014). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must "identify sufficient evidence requiring submission to the jury to survive summary judgment." Piercy v. Maketa, 480 F.3d 1192, 1197 (10th Cir. 2007). "Unsupported conclusory allegations . . . do not create an issue of fact." MacKenzie v. City & Cty. of Denver, 414 F.3d 1266, 1273 (10th Cir. 2005). Further, "the nonmovant must do more than refer to allegations of counsel contained in a brief to withstand summary judgment." Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992).

Plaintiffs assert that the district court erred by granting summary judgment on the CCPA and tortious interference claims in the Litton litigation. To state a claim for a violation of the CCPA, a plaintiff must establish, inter alia, "that the defendant engaged

3

in an unfair or deceptive trade practice" and that the challenged practice caused her

injury. Hall v. Walter, 969 P.2d 224, 235 (Colo. 1998). As the basis for their CCPA

claim against Litton,[2] plaintiffs argue Litton misrepresented to them that it would

consider their eligibility for a loan modification while intending to deny any such

modification. They rely on testimony from Chris Wyatt, a prior Litton employee, who

described the general practices of Litton. But, as Wyatt admitted, he had no personal

knowledge of Litton's efforts with respect to plaintiffs specifically. The only other

evidence on which plaintiffs rely is a one-page net present value worksheet, which they

argue proves their qualifications for a permanent loan modification. However, the

worksheet does not contain information regarding income, and there is no evidence in the

record demonstrating that plaintiffs' income was sufficient to qualify for a loan

modification. We agree with the district court that the proffered evidence does not create

a material dispute of fact.

To prevail on a claim for tortious interference with a contract, a plaintiff must

show that a defendant improperly and intentionally induced a third party to breach a

contract, causing damages. Campfield v. State Farm Mut. Auto. Ins. Co., 532 F.3d 1111,

1122 (10th Cir. 2008). The elements for a claim of tortious interference with a

prospective business relation are similar, but a plaintiff need only prove "there was a

---

[2] The CCPA claim against Ocwen was not briefed on appeal and has been waived. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived . . . .").

4

reasonable likelihood that a contract would have resulted but for the wrongful interference" rather than the existence of a contract. Id.

The tortious interference claims against Litton are premised on the same purported misrepresentations underlying the CCPA claim and fail for the same reasons identified supra. As to the claims against Ocwen, plaintiffs fault the district court for concluding that Ocwen was sued only in its capacity as Litton's successor. They argue that Ocwen is independently liable for refusing to reconsider plaintiffs for a loan modification and employing counsel with a conflict of interest. But Ocwen did not begin servicing the loan until after the property had been sold, and thus did not cause injury to plaintiffs by wrongfully interfering with a contract or expectancy. Plaintiffs have not presented any competent summary judgment evidence to demonstrate a conflict of interest in the eviction proceedings; they rely exclusively on broad claims of conflicted relationships between foreclosure lawyers, servicers, and loan owners generally. The district court properly granted summary judgment on these claims.

### III

Plaintiffs also appeal the district court's dismissal of their claims for tortious interference, IIED, and violation of the CCPA in the Goldman litigation.[3] "This court reviews de novo the district court's grant of a motion to dismiss pursuant to Rule 12(b)(6), applying the same legal standard applicable in the district court." Teigen v. Renfrow, 511 F.3d 1072, 1078 (10th Cir. 2007) (italics omitted). "All well-pleaded facts,

---

[3] They do not appeal the dismissal of their Colorado Organized Crime Control Act and Racketeer Influenced Corrupt Organizations Act claims.

as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the nonmoving party." Id.

As an initial matter, plaintiffs argue that the district court erred in relying on the summary judgment order in the Litton litigation to dismiss their tortious interference and CCPA claims against Goldman. However, they concede that any such error would be harmless if we affirm the summary judgment order. Having done so, we do not need to address the merits of this argument, and we affirm dismissal of the CCPA and tortious interference claims.

Irrespective of the outcome of the Litton litigation, plaintiffs contend they have sufficiently pleaded an independent IIED claim against Goldman.[4] Under Colorado law, an IIED claim must involve conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Rugg v. McCarty, 476 P.2d 753, 756 (Colo. 1970) (quotation omitted). The court must determine in the first instance "whether the plaintiff's allegations of outrageous conduct are sufficiently outrageous as a matter of law," which is an "exacting standard." Coors Brewing Co. v. Floyd, 978 P.2d 663, 665, 666 (Colo. 1999).

The district court noted that the allegations against Goldman were essentially the same as those directed against Litton, and repeated its conclusion from the Litton

---

[4] Plaintiffs have unequivocally disclaimed any reliance on a theory of derivative liability. Thus, for purposes of this appeal, we consider only whether they have sufficiently alleged a direct liability IIED claim against Goldman.

6

litigation that the alleged conduct, although "reprehensible," was insufficient to satisfy the IIED standard. We agree. Goldman's alleged directive to Litton to solicit and deny loan modifications en masse would certainly be indefensible if true. But to assess plaintiffs' claim, we must consider Goldman's behavior toward plaintiffs specifically. See id. at 666 ("[T]he outrageousness of [defendant's] alleged criminal conduct towards society . . . is irrelevant to [plaintiff's] claim as an individual tort plaintiff . . . . [W]e focus on [defendant's] behavior toward [plaintiff] . . . ."). There are no allegations that Goldman had any interactions with plaintiffs, much less interactions that would permit a finding of extreme and outrageous behavior.[5]

## IV

For the foregoing reasons, the district court orders are **AFFIRMED**.[6]

Entered for the Court

Carlos F. Lucero
Circuit Judge

---

[5] For this reason, plaintiffs' reliance on McGinnis v. American Home Mortgage Servicing, Inc., 817 F.3d 1241 (11th Cir. 2016), is misplaced. In that case, the Eleventh Circuit affirmed IIED liability against a loan servicer based on frequent harassing contacts. Id. at 1258. There are no allegations of similar conduct or interactions with Goldman.

[6] Because we affirm the district court on the merits, we do not reach defendants' alternative argument that each of plaintiffs' claims is barred by Colorado's Credit Agreement Statute of Frauds, Colo. Rev. Stat. § 38-10-124.

7